IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DOSHAY A. SMITH, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 7:15-cv-00449 |
| CONMED HEALTHCARE MANAGEMENT, | ) ) ) ) | By: Elizabeth K. Dillon United States District Judge |
| Defendant. | | |

**MEMORANDUM OPINION**

Plaintiff Doshay A. Smith, proceeding *pro se*, sues defendant Conmed Healthcare Management under 42 U.S.C. § 1983, claiming that it denied him access to medical care while he was incarcerated. Conmed now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Smith's complaint fails to state a claim upon which relief can be granted. For the following reasons, the court will grant Conmed's motion, but it will also grant Smith leave to file an amended complaint.

I. BACKGROUND

On November 7, 2014, Smith reported to the Roanoke City Jail to begin serving a nine-month sentence. (Dkt. No. 2 at 1, Compl.)[1] A few days earlier, he saw Dr. Ahmet Z. Burakgazi, a neurologist at Carilion Clinic, for cluster headaches. (*Id.*; Dkt. No. 2-2 at 2, Attach. 2.) Dr. Burakgazi gave Smith a Botox injection and prescribed him two nasal sprays to help alleviate his

---

[1] The facts recited in this section and relied upon below are derived from Smith's complaint and documents attached to the complaint. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Consistent with the governing standard of review under Federal Rule of Civil Procedure 12(b)(6), the court must accept Smith's factual allegations as true and construe them in the light most favorable to Smith. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 189 (4th Cir. 2010).

headaches. (Dkt. No. 2 at 1; Dkt. No. 2-2 at 2.) Smith scheduled a follow-up appointment for six weeks later. (Dkt. No. 2-2 at 2.)

Three weeks into his incarceration, on November 27, Smith submitted a "Sick Call Request" to Conmed, the jail's medical provider, complaining that he was having cluster headaches at night. (Dkt. No. 2 at 1; Dkt. No. 2-2 at 3.) The following day, a "provider" (presumably a Conmed employee) responded authorizing a consultation with a neurologist. (Dkt. No. 2-2 at 3.)[2] On December 1, another provider prescribed Imitrex for the cluster headaches. (*Id.* at 4.) In his or her note, the provider states that the medication has been ordered and instructs Smith to let him or her know how the medication is working after multiple uses. (*Id.*)

On December 30, Smith sent a letter to "Captain Haddox" of the Roanoke City Jail, complaining about the medical care that he had received at the jail. (*Id.* at 5.) Smith stated that he was in need of additional medical care for his cluster headaches, which were "at times intolerable and uncontrolled," and that he had been denied the medications, including "oxygen," he needed to treat the headaches. (*Id.*)

A week and a half later, on January 11, 2015, Smith submitted a new "Sick Call Request" to Conmed, complaining that he was still having cluster headaches, that he had been denied his follow-up appointment with Dr. Burakgazi, and that he had no other choice but to pursue "legal action outside this facility." (*Id.* at 6.) The next day, a provider responded stating that Smith was "scheduled to see a doctor this week." (*Id.*)

---

[2] Smith does not identify all of the providers that treated him while in jail, and for those he does identify, he does not say which ones treated him when. Moreover, the documents attached to his complaint contain only the providers' initials or illegible signatures. (Dkt. No. 2-2 at 3–4, 6, 8, 10–15, 18.) For this reason, the court simply refers to each provider as "provider," using both masculine and feminine pronouns where necessary.

On January 13, the Roanoke City Circuit Court ordered the Roanoke City Sheriff to transport Smith to Carilion Clinic for a follow-up appointment with Dr. Burakgazi on February 5, 2015. (*Id.* at 7.)

Six days later, on January 19, a provider denied Smith's request for a second neurology consultation, stating that his medications would remain available to him, that he would be prescribed Tylenol, and that he should follow up with his neurologist upon being released. (*Id.* at 8.)

On January 23, Smith filed a grievance with the Roanoke City Jail, complaining that he had not yet had his follow-up appointment with Dr. Burakgazi and requesting that "this matter [be] addressed with the utmost professionalism and regard for patients/inmates with severe head trauma." (*Id.* at 9.)

Six days later, on January 29, Smith submitted a new "Sick Call Request" to Conmed, complaining that he was "having very very bad cluster headaches," that the medications he had been prescribed were "not working," and that he had not yet seen a doctor. (*Id.* at 10.) On the same day, a provider responded that Smith would "be seen 2/4/15." (*Id.*)

On February 10, Smith saw Dr. Burakgazi and received a second Botox injection for his cluster headaches. (Dkt. No. 2 at 2.)

Roughly a month later, on March 7, Smith submitted a new "Sick Call Request" to Conmed, stating that he had recently had a Botox injection, but that he was "still having very bad cluster headaches." (Dkt. No. 2 at 11.) He requested to see a doctor. (*Id.*) The following day, a provider responded that Smith was "scheduled to be seen 3/9/15." (*Id.*)

On March 9, Smith submitted a new "Sick Call Request" to Conmed, stating that he had "put in multiple conmed slips" and had "yet to see a doctor about [his] situation." (Dkt. No. 2-2

at 12.) On the same day, a provider responded stating that Smith had been seen by Dr. Burakgazi on February 10, and given a Botox injection. (*Id.*) The provider further stated that Smith's then-current medications were appropriate. (*Id.*)

Approximately ten days later, on March 20, Smith submitted a new "Sick Call Request" to Conmed, stating that the last Botox injection that he had received was not working; that he felt that a right was being taken away from him; and that if the Roanoke City Jail could not help him with "this matter," then he would be forced to contact his attorney to see that something was done about it. (*Id.* at 13.) Three days later, a provider responded stating that Smith had been seen multiple times, that his case had been discussed with the medical director, that he had been seen by a specialist, and that that he was on "multiple appropriate medications." (*Id.*) The provider further stated that Smith should follow up with his neurologist upon being released. (*Id.*)

On April 15, Smith submitted a new "Sick Call Request" to Conmed, asking to see a doctor "ASAP" for his cluster headaches. (*Id.* at 14.) The next day, a provider responded stating that "[t]he regional medical director ha[d] reviewed [Smith's] chart and a new care plan will be implemented for trial." (*Id.*) The provider further stated that if Smith wanted to discuss this plan with the in-house doctor, then a visit could be scheduled. (*Id.*) Upon receiving this response, Smith asked to see the in-house doctor. (*Id.* at 15.) A provider denied the request, explaining that Smith "d[id] not need to meet the MD until we have headaches charted on the log. We will change the care plan accordingly." (*Id.*) Smith submitted the log, but was not allowed to see the in-house doctor. (Dkt. No. 2 at 3.)

4

On April 18, Smith saw the in-house doctor and was prescribed Flonase for his cluster headaches. (*Id.*; Dkt. No. 2-2 at 16, 18.) He received the medication on April 24. (Dkt. No. 2 at 3.)

Two weeks later, on May 8, the Roanoke City Sheriff's Office responded to Smith's appeal of his grievance about his medical care. (Dkt. No. 2-2 at 17.) The office denied the appeal, concluding that Smith's grievance was "based upon mere disagreement over the nature of the care [he was] receiving and not the adequacy of medical care." (*Id.*) It encouraged Smith "to continue to work with the medical providers in good faith in order to address [his] treatment concerns." (*Id.*)

On May 28, Smith submitted a new "Sick Call Request" to Conmed, complaining that he had been taken off Flonase and that, consequently, his cluster headaches were worse. (*Id.* at 18.) He asked that an order be put in for him to be put back on Flonase. (*Id.*) The following day, a provider responded stating, "Ordered." (*Id.*)

After his release from the Roanoke City Jail, Smith filed this action against Conmed under § 1983, alleging that despite having prior knowledge of his "diagnosed medical condition of '[c]luster [h]eadaches,'" it "[w]illfully and deliberately" denied him proper medication and repeatedly denied his requests to see the in-house doctor. (Dkt. No. 2 at 1–3; Dkt. No. 2-1 at 1.) "As a result of Conmed's [o]mission of proper medications and treatment," Smith claims that he continued to suffer insurmountable pain, mental anguish, suicidal thoughts, and depression. (Dkt. No. 2 at 3.) In support of his allegations, Smith attaches various documents to his complaint, including his medical records from Dr. Burakgazi, his submitted "Sick Call Request" forms, his grievance form, and the response of the Roanoke City Sheriff's Office to the appeal of his grievance. (Dkt. No. 2-2 1–18.)

5

Conmed now moves to dismiss under Rule 12(b)(6), contending that Smith's complaint fails to state a § 1983 claim. (Dkt. No. 9, Def.'s Mot. to Dismiss 1.) Smith did not file a response to the motion, but he opposed it orally at the hearing held on November 19, 2015, arguing that his complaint does state such a claim. In the alternative, he also asked for leave to file an amended complaint.

## II. DISCUSSION

### A. Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a plaintiff's complaint to determine whether the plaintiff has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To avoid dismissal, the "complaint must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Basically, the plaintiff must "nudge [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In determining whether the plaintiff has met this plausibility standard, the court must take as true all well-pleaded facts in the complaint and in any documents incorporated into or attached to the complaint. *Sec'y of State for Defence*, 484 F.3d at 705. Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards*, 178 F.3d at 244, but it need not "accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). If there is a conflict between the bare allegations of the complaint and any attached

document, then the document prevails. *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

When, as here, the plaintiff is without counsel, he is held to "less stringent standards," and the court must construe his complaint "liberally." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court is not, however, "expected to construct full blown claims from sentence fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Nor is it required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." *Id.*

**B. Smith's complaint fails to state a plausible § 1983 claim against Conmed.**

Conmed submits that Smith's complaint fails to state a § 1983 claim for two reasons. (Dkt. No. 10, Def.'s Mem. in Supp. of Mot. to Dismiss 2–3.) First, Conmed cannot be held liable for the alleged tortious or wrongful acts of its employees because there is no *respondeat superior* liability under § 1983. (*Id.*) And second, Smith fails to allege sufficient facts to show that Conmed, as opposed to its employees, acted with deliberate indifference to a serious medical need. (*Id.* at 2.)

The court agrees with Conmed that Smith's complaint fails to state a plausible § 1983 claim. To make out such a claim, a plaintiff must allege sufficient facts to establish "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, it appears that Smith is claiming that Conmed violated his Eighth Amendment right to medical care while in jail. (*See* Dkt. No. 2 at 1–3; Dkt. No. 2-1 at 1.) To establish the violation of this right, a plaintiff must allege sufficient facts to show that the

defendant acted with deliberate indifference to a serious medical need. *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

In this case, Smith sues only Conmed, a private corporation. While a private corporation qualifies as a "person" under § 1983, it cannot be held liable "for torts committed by its [employees] when such liability is predicated upon a theory of *respondeat superior*." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). It appears that Smith is attempting to advance just such a theory here. He alleges no facts showing that Conmed itself had any part in his medical care. He does, however, allege that various persons did. Specifically, he references "Medical," "In house Doctor," "Provider," and "Med techs Hannah, Joy, [and] Ms. Vikki." (Dkt. No. 2 at 1–3; Dkt. No. 2-2 at 1–18.) Smith alleges that some or all of these persons committed tortious or wrongful acts, including denying him adequate and timely access to medical care. Though Smith does not identify the persons as Conmed employees, that is a reasonable inference in light of his other allegations. So to the extent that Smith is seeking to hold Conmed liable for the tortious or wrongful acts of its employees, his complaint fails to state a plausible § 1983 claim.

While a private corporation cannot be held liable under § 1983 for the torts of its employees, it can be held liable where its "official policy or custom . . . causes the alleged deprivation of federal rights." *Austin*, 195 F.3d at 728. Here, Smith does not allege any facts showing that an official Conmed policy or custom deprived him of his Eighth Amendment right to medical care. On the contrary, he alleges facts showing that he routinely received medical care; he just disagreed with the care plan he was given. The deliberate indifference standard "is not satisfied by . . . mere disagreement concerning "[q]uestions of medical judgment,"" *Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013) (quoting *Russell v. Sheffer*, 528 F.2d 318, 319

8

Case 7:15-cv-00449-EKD-RSB   Document 18   Filed 12/15/15   Page 8 of 9   Pageid#: 62

(4th Cir. 1975)), or mere negligence in diagnosis or treatment. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). Accordingly, to the extent that he is seeking to hold Conmed liable for a policy or custom, his complaint fails to state a plausible § 1983 claim.

III. CONCLUSION

Because Smith's complaint fails to state a plausible § 1983 claim, the court will grant Conmed's motion to dismiss and dismiss the complaint. The court will, however, grant Smith's oral request for leave to file an amended complaint because it is possible that he could allege sufficient facts to state a claim. *See Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999) ("Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim." (quoting 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 360–67 (2d ed. 1990)).

An appropriate order will follow.

Entered: December 15, 2015.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge